AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

United States of America
v.
RASHAD EMON CLARK, and
MANDI L. BOWMAN

Case No. 12-8039-JMH

*Defendant(s)*

FILED by _____ D.C.

FEB - 3 2012

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  February 2, 2012  in the county of  Palm Beach  in the  Southern  District of  Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 1591(a)(1) | Sex Trafficking of Children |
| 18 U.S.C. Section 2422(b) & 371 | Inducing a Minor to Engage in Commercial Sex Act and Conspiring to Induce a Minor to Engage in Commercial Sex Act |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Christina J. Pryor
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 02/03/2012

_____
*Judge's signature*

City and state:  West Palm Beach, Florida

U.S. Magistrate Judge James M. Hopkins
*Printed name and title*

## **AFFIDAVIT**

Your affiant, Christina J. Pryor, being duly sworn, does hereby depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for the past two and a half years. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, Miami Division. Prior to joining the Miami Division, I attended the FBI Academy in Quantico, Virginia, for five (5) months where I received training in federal criminal laws and investigation techniques. Among my responsibilities as a Special Agent are investigating crimes against children, particularly offenses involving child pornography and the exploitation of children to include child prostitution.

2. The facts set forth in this affidavit are based in part on my personal knowledge, information obtained throughout this investigation by others, including other law enforcement officers, and information gained from my training and experience. I am familiar with the facts and circumstances of this investigation. I have received training in the area of child prostitution and child exploitation through the FBI.

3. I am investigating the activities of RASHAD EMON CLARK, date of birth XX/XX/1978 and MANDI LYNN BOWMAN, date of birth XX/XX/1990. As will be shown below, there is probable cause to believe that CLARK and BOWMAN conspired to and knowingly persuaded, induced, enticed, or coerced an individual who has not yet attained the age of 18 years to engage in prostitution or any sexual activity for which a person can be charged with a criminal offense . I am submitting this affidavit in support of a criminal complaint charging RASHAD EMON CLARK and MANDI LYNN BOWMAN

with violations of 18 U.S.C. §§ 1591(a)(1) 371 and 2422(b)

4. The statements in this Affidavit are based in part on information provided to me by Detective Lori Colombino of the West Palm Beach Police Department and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that RASHAD EMON CLARK and MANDI LYNN BOWMAN committed violations of Title 18, United States Code, §§ 1591(a)(1) 371 and 2422(b).

## STATUTORY AUTHORITY

5. This investigation concerns alleged violations of Title 18, United States Code, §§ 1591. Section 1591 (a) establishes that (1), "Whoever knowingly, in or affecting interstate or foreign commerce... recruits, entices, harbors, transports, provides, or obtains by any means a person; or (2) benefits financially or by receiving anything of value, from participation, in a venture, which has engaged in an act described in violation of paragraph (1), knowing that force, fraud, or coercion described in subsection (c)2 will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

This investigation also concerns alleged violations of Title 18, United States Code, §§ 371 and 2422(b). Section 371 states, in part, "If two or more persons conspire to either commit any offense against the United States, or any agency thereof in any manner and in any purpose, and or more of such persons do any act to effect the object

of the conspiracy, each shall be fined under this title or imprisoned..." Section 2422(b) establishes that, "Whoever using the mail, or any facility or means of interstate or foreign commerce... knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do, shall be fined under this title and imprisoned not less than 10 years or for life."

## BASIS FOR FACTS
## CONTAINED IN THIS AFFIDAVIT

6. I have learned through my training, experience, and contact with other trained law enforcement officers that prostitution has generally moved to escort based services, because of law enforcement pressure being placed on prostitutes who work on the streets in view of the public. This escort based service primarily works by way of telephone or the use of the internet. This underground movement, along with the use of the internet, including e-mail services and online classified services, enables those individuals, commonly referred to as "pimps" (for whom prostitutes work), to keep prostitutes off the streets, giving the appearance that there is less prostitution, in an attempt to avoid law enforcement detection.

7. Often, pimps set a monetary quota for prostitutes to meet per day. Based on source information and information provided to me by other trained law enforcement officers, a pimp can easily generate up to $1,000.00 a day with one prostitute. Therefore, to continue to make money and avoid law enforcement detection, the majority of pimps transport their prostitutes from one location to another. Further, when any given location becomes too visible to law enforcement (i.e. "hot"), or fails to generate enough money, or a large public gathering is to take place in a certain city,

such as major sporting events, pimps transport their prostitutes from one state to another to make their money. Prostitutes frequently work defined areas on the street known as "tracks," and/or serve as escorts through escort services. The escort services frequently advertise on web pages and in the print media. Escort services frequently are fronts for prostitution. Pimps and prostitutes frequently use the internet, in addition to cellular phones, to communicate, coordinate dates and keep the pimps informed regarding the prostitutes availability. It is my experience that pimps and prostitutes frequently change e-mail accounts or use fictitious names to avoid detection.

## INVESTIGATIVE FINDINGS

8. On February 2, 2012, B. L., the step-father of the juvenile victim, date of birth, XX/XX/1997, contacted West Palm Beach Police Department to report that the juvenile victim was missing and believed to be in danger and engaged in prostitution activities. Officers conducted a search of on-line classified ads for escort and prostitution services in the West Palm Beach area and located an ad that they believed depicted the juvenile victim.

9. An officer, acting in an undercover capacity as a client or "john" interested in arranging a "date" with the juvenile, called the cellular phone number listed in the ad in an attempt to located and recover the juvenile victim. The juvenile victim agreed to meet the undercover officer and told the officer to meet her at the Days Inn located at 2300 45th Street, West Palm Beach, Florida, 33407 where she was staying.

10. The officer arrived at the Days Inn located at 2300 45th Street, West Palm Beach and made phone contact with the juvenile victim. The juvenile victim met the officer in the parking lot of the hotel. Officers approached the juvenile and explained

their purpose to her. The juvenile victim confirmed her identity to the officers and advised that she was staying in Room 221. Officers further interviewed the juvenile who advised that she had been staying in Room 221 along with an adult male later identified *as Jmit* RASHAD EMON CLARK and an adult female, later identified as MANDI L. BOWMAN. *cjw* The juvenile victim allowed officers in to Room 221 where she was staying. The juvenile advised that she had engaged in prostitution in the hotel room with other unknown individuals prior to the officers' arrival. Located in the room was luggage, including a black duffle bag, a black colored baseball cap, a laptop computer, and a used condom was observed lying ~~in~~ *Jmit* ~~next~~ *cjw* to the safe.

   11. Room 221 was then closed and secured by officers and agents.

   12. Detective Lori Colombino interviewed the juvenile victim. The juvenile reported that she was approached by CLARK at a convenience store. CLARK gave the juvenile his cellular phone number and told her to contact him. The juvenile reported that CLARK's cellular phone, telephone number (305) 300-3784, was believed to be a Sprint cellular telephone and described it as a touch screen phone but not an iPhone. The juvenile victim reported her cellular phone number as (561) 932-7906. CLARK discussed with the juvenile prostitution activities at that time and had two adult prostitutes in the vehicle with him. The juvenile contacted CLARK by cellular phone the following day, and CLARK picked up the juvenile and drove her to the Days Inn located at 2300 45th Street, West Palm Beach, Florida. At the hotel, CLARK engaged in sexual intercourse with the juvenile victim. CLARK flushed the condom down the toilet and paid the juvenile victim $40.00. CLARK discussed prostitution proceeds and fees and the percentages of the money CLARK would retain. CLARK also advised the juvenile victim

that she had to choose money or friends. CLARK advised the juvenile victim in setting a fee schedule for prostitution services, to include $150.00 for one half hour of vaginal sex, $250.00 for one hour of vaginal sex, $80.00 for oral sex, and told her to set her own price for anal intercourse. In addition, prior to men arriving at the hotel room on February 2, 2012, CLARK provided the juvenile victim with lubricant and condoms.

CLARK then dropped the juvenile victim off at another location.

13. The following day CLARK and the juvenile victim communicated by means of talking and text messaging via cellular phones. On February 2, 2012, CLARK again picked up the juvenile victim and brought her to Room 221 at the Days Inn located at 2300 45th Street, West Palm Beach, Florida. BOWMAN was present at the hotel and was in the room when CLARK and the juvenile victim again had sexual intercourse. CLARK reported to BOWMAN that the juvenile victim was 16 years old. On February 2, 2012, the juvenile victim had sexual contact with two men prior to the undercover officer's arrival. The juvenile victim had vaginal intercourse with one individual, and the second man masturbated in her presence. Both men exchanged money with the juvenile victim in exchange for the acts. The juvenile victim paid a portion of that money to CLARK.

14. BOWMAN was subsequently interviewed by agents. BOWMAN reported that her cellular phone number was (561) 232-0683, and it was the number she used to post ads online advertising herself for escort and prostitution activities.

She advised that she had only known the juvenile victim for a short period of time. BOWMAN was staying with an adult male known to her by the street name of "Shagg Dog." "Shagg Dog" and BOWMAN met the juvenile victim a few days prior to

February 2, 2012. "Shagg Dog" offered the juvenile victim his phone number, and BOWMAN advised the juvenile victim called "Shagg Dog". Thereafter, "Shagg Dog" picked up the juvenile victim and brought her to the Days Inn, located at 2300 45th Street, West Palm Beach, Florida. BOWMAN was asked to leave the room for fifteen minutes. Due to the early morning hours, BOWMAN declined to leave the room where "Shagg Dog" and the juvenile victim were. BOWMAN covered her head with the covers and then heard sounds and noises consistent with sexual activity between "Shagg Dog" and the juvenile victim.

15. Thereafter, "Shagg Dog" asked BOWMAN to instruct the juvenile victim as how to engage in prostitution such as answering calls from potential customers and negotiating prices. BOWMAN taught the juvenile how to set up and schedule appointments, and how to negotiate prices with johns. BOWMAN took photographs of the juvenile and she created and posted the advertisement on Backpage.com to solicit for prostitution.

16. BOWMAN was shown a Florida Driver's License photograph of RASHAD EMON CLARK, date of birth September 15, 1978. BOWMAN positively identified CLARK as the person she knows as "Shagg Dog."

## CONCLUSION

17.     Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that RASHAD EMON CLARK and MANDI LYNN BOWMAN have committed acts constituting violations of 18 U.S.C. §§ 1591(a)(1), 371 and 2422(b).  Your Affiant, therefore, respectfully requests that criminal

complaints be issued charging CLARK and BOWMAN with violations of 18 U.S.C. §§ 1591(a)(1), 371 and 2422(b).

_____
Christina J. Pryor
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me
this __3__ day of February 2012.

_____
James M. Hopkins
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 12-8039-JMH

UNITED STATES OF AMERICA

vs.

RASHAD EMON CLARK and
MANDI L. BOWMAN,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __x__ No

                Respectfully submitted,

                WIFREDO A. FERRER
                UNITED STATES ATTORNEY

BY:   LOTHROP MORRIS
       ASSISTANT UNITED STATES ATTORNEY
       Florida Bar No. 095044
       500 Australian Avenue, Suite 400
       West Palm Beach, FL 33401
       (561) 820-8711
       (561) 820-8777 (FAX)
       LOTHROP.MORRIS@USDOJ.GOV